UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC.,              )
                                  )
         Plaintiff,               )
                                  )
v.                                )          Civil Action No.: 20-1729 (TJK)
                                  )
U.S. DEPARTMENT. OF STATE,        )
                                  )
         Defendant.               )
_____ )

## DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

Pursuant to Federal Rule of Civil Procedure 12(c), Defendant respectfully moves for judgment on the pleadings as to all claims asserted in this action, which arise under the Freedom of Information Act ("FOIA"). Enclosed are a supporting memorandum and proposed order.

Respectfully submitted,

MICHAEL R. SHERWIN
Acting United States Attorney

DANIEL F. VAN HORN, D.C. BAR # 924092
Civil Chief

By: _____/s/_____
JEREMY S. SIMON, D.C. BAR #447956
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-2528
Jeremy.Simon@usdoj.gov

Counsel for Defendant

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC.,                )
                                     )
            Plaintiff,               )
                                     )
v.                                   )        Civil Action No.: 20-1729 (TJK)
                                     )
U.S. DEPARTMENT. OF STATE,           )
                                     )
            Defendant.               )
_____    )

## DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION
## FOR JUDGMENT ON THE PLEADINGS

Plaintiff's May 29, 2019, Freedom of Information Act ("FOIA") request, which is set forth

more fully in paragraph 5 of the Complaint, is identical to a prior request Plaintiff submitted to the

U.S. Department of State (the "Department"), except as to the date of the prior request, which was

October 31, 2017.  (Compl. ¶ 8)  That prior request was the subject of a lawsuit Plaintiff brought

against the Department, *Judicial Watch, Inc. v. Dep't of State*, Civ. A. No. 18-0300 (TJK) (D.D.C.)

(hereinafter, "*Judicial Watch I*").   In response to the October 31, 2017, request at issue in *Judicial*

*Watch I*, the Department neither confirmed nor denied the existence of responsive records on the

basis of FOIA exemptions that precluded acknowledgment as to whether or not responsive records

exist (i.e., a "*Glomar*" response), and that response was upheld by the Court in *Judicial Watch I* in

a decision dated March 13, 2019, granting summary judgment to the Department and denying

Plaintiff's cross-motion.   (Case No. 18-300, ECF Nos. 17 and 18).  That decision is published at

*Judicial Watch, Inc. v. Dep't of State*, 373 F. Supp. 3d 142 (D.D.C. 2019).  Despite that decision,

Plaintiff filed the duplicative request at issue here less than three months later in May 2019.

Plaintiff contends that a document declassified on May 8, 2020, approximately one year

*after* Plaintiff's submission of the request at issue, and which is attached as Exhibit "A" to the

Complaint, supersedes the Department's prior *Glomar* response.  (Compl. ¶ 10)    Based on

principles of res judicata and collateral estoppel, this Court's prior decision remains binding on

Judicial Watch, and thus, the Court should grant judgment on the pleadings in favor of Defendant.

## **FACTS**

On May 29, 2019, Plaintiff submitted a FOIA request to the Department that sought:

1. Any and all requests for information, analyses, summaries, assessments, transcripts, or similar records submitted to any Intelligence Community member agency by former United States Ambassador to the United Nations Samantha Powers concerning, regarding, or relating to the following:

   a. Any actual or suspected effort by the Russian government or any individual acting on behalf of the Russian government to influence or otherwise interfere with the 2016 presidential election.

   b. The alleged hacking of computer systems utilized by the Democratic National Committee and/or the Clinton presidential campaign.

   c. Any actual or suspected communication between any member of the Trump presidential campaign or transition team and any official or employee of the Russian  government or any individual acting on behalf of the Russian government.

   d. The identities of U.S. citizens associated with the Trump presidential campaign or transition team who were identified pursuant to intelligence collection activities.

2. Any and all records or responses received by former United States Ambassador to the United Nations Samantha Powers and/or any employee, staff member, or representative of United States Mission to the United

Nations in response to any request described in part 1 of this request.

3. Any and all records of communication between any official, employee, or representative of any Intelligence Community member agency and former United States Ambassador to the United Nation Samantha Powers and/or any employee, staff member, or representative of the United States Mission to the United Nations concerning, regarding, or relating to any request described in part 1 of this request.

(Compl. ¶ 5) The timeframe of the request was identified as "January 1, 2016 through the present." (*Id.*) The request, which is incorporated by reference in the Complaint, is attached hereto as Exhibit 1.

Plaintiff asserts in the Complaint that the request at issue here is "identical" to the request in *Judicial Watch I*. (Compl. ¶ 8) In *Judicial Watch I*, the Court characterized Plaintiff's request as seeking "records about any requests by former Ambassador to the United Nations Samantha Power for intelligence reports related to Russia's attempts to influence the 2016 presidential election and other associated matters," *Judicial Watch I*, 373 F. Supp. 3d at 144, which was consistent with representations by Plaintiff in its summary judgment filing in that case.[1]

Also consistent with those prior representations, Plaintiff alleges here that the subject matter of its request concerns Russian interference in the 2016 presidential election (Compl. ¶ 5), and describes the request as one "for records about U.N. Ambassador Samantha Power's requests to 'unmask' the identities of U.S. citizens whose names appeared in intelligence reports

---

[1]    *See, e.g., Judicial Watch I*, ECF No. 9-1, Pl. Mot. Summ. J. at 4-5 ("The subject of Plaintiff's FOIA complaint is *not* records about the U.N. Ambassador receiving briefings about Russian election interference, but records about the U.N. Ambassador asking for the names of specific U.S. citizen targets of Russian espionage.")

3

concerning Russian interference in the 2016 presidential election." (ECF No. 10, Jt. Status Rep. ¶ 1)

Indeed, the only difference between the May 2019 request at issue here and the FOIA request in *Judicial Watch I* is the date of the requests, with the latter having been submitted October 31, 2017. (Compl. ¶ 8) However, because Ambassador Power's tenure as United States Ambassador to the United Nations ended January 20, 2017, that is a distinction without a difference. Both requests post-dated her tenure in that position and both requests sought records through the end of her tenure in January 2017.

In response to the October 2017 request in *Judicial Watch I*, the Department neither confirmed nor denied the existence of responsive records on the basis of Exemption 1 and 3 of FOIA. In ruling on cross-motions for summary judgment in that case, this Court upheld the Department's *Glomar* response, granted summary judgment in favor of the Department, and denied Plaintiff's cross-motion for summary judgment. *Judicial Watch I,* 373 F. Supp. 3d at 146-49.

Among other things, the Court reasoned that the Department's declarant had explained that "acknowledgement of the existence or nonexistence of the information requested would 'reveal sensitive information concerning what a senior U.S. policy maker might or might not have known at a particular point in time about U.S. counterintelligence information and efforts related to Russian interference in the 2016 Presidential election.'" *Id*. at 146. The Court also rejected Plaintiff's argument that "'[e]veryone knows about the Russian election investigation,'" and its reliance on "a report that '[a] sitting Congressman has confirmed the former U.N. Ambassador was involved in unmasking requests.'" *Id.* at 148. The Court explained that "these reports do not cast doubt on *State's* asserted reasons why a *Glomar* response is necessary to protect sensitive

4

intelligence interests or harm to the national security. . . [n]or do they necessitate any response from *State*, since doing so would reveal they type of information its *Glomar* claim is intended to forestall." *Id.* at 148-49.  Plaintiff did not appeal.

The Court's decision granting summary judgment to the Department was issued March 13, 2019.  Notwithstanding the Court's decision, Plaintiff submitted its identical FOIA request to the Department in May 2019, approximately two months later.  Plaintiff now seeks to justify its re-submission of that identical request in May 2019 based on the declassification *one year later* by the Acting Director of the Office of the Director of National Intelligence ("ODNI") of a memorandum dated May 4, 2020 that provided a "revised list of identities of any officials who submitted requests to the National Security Agency at any point between 8 November 2016 and 31 January 2017, to unmask the identity of former National Security Advisor, Lieutenant General Michael T. Flynn (USA-Ret)."  (ECF No. 1-1, Ex. A to Compl. at ECF Page 3)

The content of that memorandum, however, does not match the subject matter of Plaintiff's FOIA request.  The declassified document states that it reflects "recipients who may have received Lt. Gen Flynn's identity in response to a request processed between 8 November 2016 and 31 January 2017 to unmask an identity that had been generically referred to in an NSA foreign intelligence report" and further states that "16 authorized individuals requested unmaskings for different NSA intelligence reports for select identified principals."  (*Id.* at ECF Page 4)   Former Ambassador Power is listed as one of the "identified principals" for whom an "authorized individual" requested unmaskings and six dates pertaining to those requests (amounting to seven requests in total) appear in the document under her name for the period from November 16, 2016 to January 11, 2017.  (*Id.*)   The document, however, is silent as to the subject matter of the "different NSA foreign intelligence reports" to which the unmasking requests related.  (*Id.*)

5

In contrast, the overarching subject matter of Plaintiff's FOIA request is Russian interference in the 2016 presidential election, as Plaintiff itself has represented in court filings, both in this case and in *Judicial Watch I*. In evaluating waiver in this context, silence makes a difference. Thus, the content of the declassified document does not match the FOIA request with the exactitude required to effectuate a waiver of the Department's *Glomar* response under the strict test applied by the D.C. Circuit.

## **STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure ("Rule") 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed . . . but early enough not to delay trial." "A motion for judgment on the pleadings pursuant to Rule 12(c) may be granted 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Fox v. District of Columbia*, 924 F. Supp. 2d 2164, 268 (D.D.C. 2013). The standard of review for evaluating a motion for judgment on the pleadings is "'essentially the same as the standard for a motion to dismiss.'" *Id.* at 269; *Avery v. United States,* 534 F. Supp. 2d 40, 41 (D.D.C. 2008) (same).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When resolving a motion to dismiss pursuant to Rule 12(b)(6), the pleadings are construed broadly so that all facts pleaded therein are accepted as true, and all inferences are viewed in a light most favorable to the plaintiff. *Sykes v. Dudas*, 573 F. Supp. 2d 191, 198 (D.D.C. 2008). However, a district court is not required to accept conclusory allegations or unwarranted factual deductions as true. *Id.* at 198-99. "Threadbare recitals of the elements of a cause of action, supported by mere

6

conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Likewise, the court need not "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Accordingly, a plaintiff must present factual allegations that are sufficiently detailed "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 668 (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted). Therefore, the focus is on the language in the complaint and whether the complaint sets forth sufficient factual allegations to plausibly support the plaintiff's claims for relief.

On a motion to dismiss under Rule 12(b)(6), which parallels a Rule 12(c) motion, the Court may consider, in addition to the facts alleged in the complaint, documents attached to, or incorporated into the complaint by reference, as well as matters of which it may take judicial notice. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624-25 (D.C. Cir. 1997); *see also Lipton v. MCI Worldcom, Inc.*, 135 F. Supp. 2d 182, 186 (D.D.C. 2001) ("[T]he court may consider the defendant's supplementary material without converting the motion to dismiss into one for summary judgment. This Court has held that 'where a document is referred' to in the complaint and is central to plaintiff's claims, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment.'").

## ARGUMENT

### I.   This Lawsuit Is Barred By Collateral Estoppel And Res Judicata

Judgment on the pleadings should be granted in favor of Defendant on the basis of collateral estoppel and res judicata in light of this Court's prior decision in *Judicial Watch I*. Under

collateral estoppel, or issue preclusion, "'once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.'" *Landmark Legal Found. v. Dep't of Labor*, 278 F. Supp. 3d 420, 426 (D.D.C. 2017). "In order for collateral estoppel to bar a claim, '(1) the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case; (2), the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case; and (3), preclusion in the second case must not work a basic unfairness to the party bound by the first determination.'" *Mead v. Lindlaw,* 839 F. Supp. 2d 66, 71 (D.D.C. 2012). Collateral estoppel, moreover, has been applied when a plaintiff seeks to pursue a FOIA request that is identical other than as to its date as to a prior request that already was the subject of unsuccessful litigation brought by the same plaintiff. *Landmark Legal*, 278 F. Supp. 3d at 430 (concluding that "Landmark's FOIA request in this case is identical to its FOIA request in *Landmark I*, except for the agency from which records are sought. And because the court in *Landmark I* has already addressed the issue of whether Landmark's FOIA request as drafted is a valid FOIA request, this Court finds that collateral estoppel precludes Landmark from pursuing that same request in this case.")

Thus, all requirements for collateral estoppel are met here. The same FOIA request, and the same legal issue, was litigated between the same parties in *Judicial Watch I*. Preclusion in this action also would not work any unfairness to Plaintiff who, without any cited basis, submitted the same FOIA request at issue in *Judicial Watch I* to the Department within three months of the Court's summary judgment decision in that case.

Under res judicata, or claim preclusion, "a subsequent lawsuit will be barred if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties

8

or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction." *Capital Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman*, 569 F.3d 485, 490 (D.C. Cir. 2009). All of those requirements also are met here. Res judicata precludes not only the re-litigation of claims resolved in litigation between the same parties, but also litigation of matters that could have been raised in the prior litigation. *NRDC v. EPA*, 513 F.3d 257, 261 (D.C. Cir. 2008). Res judicata thus bars the instant litigation, which is between the same parties in *Judicial Watch I*, involves the same FOIA request, and raises the same *Glomar* response that already has been upheld by this Court. *See, e.g., Benavides v. U.S. Marshal Serv.,* No. 92-5622, 1993 U.S. App. LEXIS 38657, at *4-6 (5th Cir. Mar. 24, 1993) (applying res judicata to bar second FOIA suit by same plaintiff against same defendant despite plaintiff's contention that in the prior suit "he was unable to present evidence timely that the address book existed").

Although courts have recognized that collateral estoppel and/or res judicata may be inapplicable when circumstances change prior to the re-submission of a FOIA request, *ACLU v. Dep't of Justice,* 321 F. Supp. 2d 24, 27, 34 (D.D.C. 2004) (second FOIA request submitted after issuance of declassification memorandum and tailored to that memorandum not barred under res judicata by prior adjudication), here the cited changed circumstances arose one year *after* Plaintiff's request was submitted. As a general rule, an agency's decision on a FOIA request is evaluated at the time it is made, not based on "'post-response occurrences" that would "'create an endless cycle of judicially mandated reprocessing each time some circumstance changes.'" *ACLU v. NSA,* 925 F.3d 576, 602 (2d Cir. 2019); *see also Selfie v. FDA*, Civ. A. No. 17-3960, 2020 U.S. Dist. LEXIS 184884, at *17 (S.D.N.Y. Oct. 6, 2020) (citing the "general rule" for the conclusion that plaintiff's "contention that some of the information at issue was made public after [the agency] processed his FOIA request is unavailing"); *Bonner v. United States*, 928 F.2d 1148, 1153 (D.C.

9

Cir. 1991) ("[t]he fact that some documents in a sample set become releasable with the passage of time does not, by itself, indicate any agency lapse" and observing that "'[t]he government cannot be expected to follow an endlessly moving target'").

Here, the Department already had advised Plaintiff of its position on the FOIA request at issue when it had litigated its *Glomar* response to the identical request in *Judicial Watch I*, which was upheld by this Court's grant of summary judgment to the Department in March 2019. Plaintiff has alleged in the Complaint no basis to believe that the Department's position had changed at the time it re-submitted an identical request less than three months later and identified no such basis in the May 2019 FOIA request. (Ex. 1 hereto). Thus, under these circumstances, the Court should evaluate the question of issue and claim preclusion at the time of the submission of the FOIA request, not at the time of the filing of this lawsuit. Accordingly, judgment on the pleadings should be granted in favor of Defendant.

## II. Plaintiff In Any Event Has Failed To Plausibly Plead A Waiver Of the Department's *Glomar* Response.

Plaintiff contends in the Complaint that it should be permitted to proceed based on the declassification of the May 2020 document, which Plaintiff seems to suggest effectuated a waiver that now renders State's *Glomar* response inapplicable. But, as discussed above, that development *subsequent* to the submission of the May 2019 FOIA request does not preclude the application of collateral estoppel or res judicata here. In any event, under the strict test adopted by the D.C. Circuit for evaluating a waiver in this context, there has been no such waiver and, therefore, this Court's prior decision remains binding on Plaintiff.

### A. There Is Not An Exact Match Between The FOIA Request And The Content Of The Declassified Memorandum As Required For Waiver.

"The D.C. Circuit has established a 'strict test' to be applied to claims of official disclosure." *Schaerr v. Dep't of Justice*, Civ. A. No. 18-0575 (ABJ), 2020 WL 435455, at *11

10

(D.D.C. Jan. 28, 2020) (quoting *Moore v. CIA*, 666 F.3d 1330, 1333 (D.C. Cir. 2011)). According to that test, "[i]nformation is 'officially acknowledged' by an agency where: (1) 'the information requested [is] as specific as the information previously released,' (2) the requested information 'match[es] the information previously disclosed,' and (3) the requested information was already 'made public through an official and documented disclosure.'" *Id.* (quoting *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990)). To overcome a *Glomar* assertion, a plaintiff must therefore pinpoint a prior disclosure that "matches both the information at issue—the existence of records— and the specific request for that information," and that "has been publicly and officially acknowledged *by the agency.*" *Id.* (quoting and citing *Wolf v. CIA*, 473 F.3d 370, 378-79 (D.C. Cir. 2007)). In short, "the law demands exactitude when defining the scope of a *Glomar* waiver, even the smallest mismatch precludes waiver." *Am. Ctr. for Law & Justice v. Nat'l Sec. Agency*, Civ. A. No. 17-1425 (TNM), 2020 U.S. Dist. LEXIS 131212 at *24 (D.D.C. July 24, 2020).

Plaintiff fails to meet these requirements. The declassification of the May 2020 document does not effectuate a waiver of the Department's *Glomar* response to the FOIA request at issue for the simple reason that the subject matter of the intelligence reports to which the unmasking requests relate is not disclosed in that document. The document identifies "recipients who may have received Lt. Gen Flynn's identity in response to a request processed between 8 November 2016 and 31 January 2017 to unmask an identity that had been generically referred to in an NSA foreign intelligence report," but does not identify the subject matter of any such report. (ECF No. 1-1, Ex. A to Compl. at ECF Page 3)

In contrast, the subject matter of Plaintiff's request, as confirmed by Plaintiff in court filings, is Russian interference in the 2016 presidential election. Plaintiff stated in a status report in this case that the request is "for records about U.N. Ambassador Samantha Power's requests to

11

'unmask' the identities of U.S. citizens whose names appeared in intelligence reports concerning Russian interference in the 2016 presidential election." (ECF No. 10, Jt. Status Rep. ¶ 1)

Plaintiff also represents in the Complaint in this action that the request is "identical" to the request in *Judicial Watch I*. (Compl. ¶ 8) In *Judicial Watch I*, Plaintiff asserted in its summary judgment filing that "[t]he subject of Plaintiff's FOIA complaint is . . . records about the U.N. Ambassador asking for the names of specific U.S. citizen targets of Russian espionage." *See Judicial Watch I*, ECF No. 9-1, Pl. Mot. Sum. Judgment at 4-5. And, based on Plaintiff's representations,[2] the Court in *Judicial Watch I* understood the overarching subject matter of the request as pertaining to "requests by former Ambassador to the United Nations Samantha Power for intelligence reports related to Russia's attempts to influence the 2016 presidential election and other associated matters." *Judicial Watch I,* 373 F. Supp. 3d at 144.

The purpose of a *Glomar* response is to enable an agency to neither confirm nor deny the existence of responsive records when doing so would implicate FOIA exemptions. By tethering all parts of its FOIA request to the subject matter of Russian interference in the 2016 election, any response by the Department to the FOIA request necessarily will be viewed in that context. That context, therefore, must be considered in evaluating whether the Department's *Glomar* response has been waived by the declassified memorandum.

---

[2]     Under the doctrine of judicial estoppel, Plaintiff is bound in this case by this representation in *Judicial Watch I* as to the subject matter of the FOIA request because the Court relied on that representation in its decision in *Judicial Watch I*. *Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 798 (D.C. Cir. 2010) ("There are at least three questions that a court should answer in deciding whether to apply judicial estoppel: (1) Is a party's later position clearly inconsistent with its earlier position? (2) Has the party succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled? (3) Will the party seeking to assert an inconsistent position derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped?")

The declassified memorandum does not state that any of the unmasking requests (let alone any unmasking request referenced in the memorandum under Ambassador Power's name) pertain to Russian interference in the 2016 election. In light of this mismatch between the limited content of the declassified memorandum and the subject matter of the FOIA request (both on its face and as characterized by Plaintiff in court filings), no waiver as to any part of the FOIA request has occurred.

The Court in *American Center*, 2020 U.S. Dist. LEXIS 131212, a case in which the Department also was a defendant, recently applied this strict test to a different FOIA request from a different requester in evaluating any alleged waiver resulting from the declassified May 2020 document. As is relevant here, the Court in *American Center* held that there was no waiver with respect to the portions of the FOIA request to the Department in that case that sought unmasking requests pertaining to a specific subject matter because the declassified memorandum did not reference any such subject matter. *Id.* at \*19 (no waiver with respect to the parts of request seeking information pertaining to requests from Power "regarding 'minimization procedures'" in connection with unmasking requests because the term "minimization procedures" does not appear in the declassified memorandum).

Indeed, the Court in *American Center* found a waiver only as to one part of the request to the Department (part 2 of the request) based on the declassified memorandum, and that was because the Court found that part of the request as it related to Ambassador Power and General Flynn precisely matched the content of the declassified memorandum. Specifically, that part of the request sought records regarding requests from Ambassador Power to the National Security Agency to unmask the names of certain specified individuals, one of them being General Flynn, contained in intelligence reports irrespective of the subject matter of the reports. *Id.* at \*20

13

(describing part 2 of the request).  Only as to that part of the request did the Court find a waiver that precluded the Department's *Glomar* response as to that specific information.  *Id.* at *23-24. But even there the Court found the waiver to be narrow, explaining that "[t]he memorandum references only requests to unmask Lt. Gen. Michael Flynn, not anyone else" and that "[g]iven this silence, it does not establish the existence of unmasking records for any of the 46 others named in ACLJ's request."  *Id.* at *24.  The Court also found that the waiver was limited only to the specific requests referenced under Ambassador Power's name in the declassified memorandum. *Id.* at *25.

In contrast to *American Center*, the request at issue here does not seek requests by Ambassador Power to unmask General Flynn's identity in intelligence reports irrespective of the subject matter of those reports.  Rather, the request seeks information pertaining to certain subject matters related to Russian interference in the 2016 election, as Plaintiff has repeatedly acknowledged. The declassified memorandum, however, is silent as to the subject matter of the intelligence reports to which the unmasking requests relate and, "[g]iven the precision the case law demands, this silence 'makes a difference.'"  *American Center,* 2020 U.S. Dist. LEXIS 131212, at *18.  Thus, based on the analysis in *American Center*, this mismatch between the FOIA request and the memorandum precludes a finding of waiver.  Accordingly, for reasons previously held by this Court in *Judicial Watch I*, the Department's *Glomar* response remains undisturbed as it can neither admit nor deny whether responsive records exist without implicating FOIA Exemptions 1 and 3.

## B.   Plaintiff's Attempt To "Narrow" Its Request Post-Litigation Fails

Apparently recognizing this disconnect, Plaintiff now is purporting to narrow its May 2019 FOIA request in an effort to better match it to the content of the declassified memorandum.  In the

14

September 4, 2020 Joint Status Report, Plaintiff states that "in meeting and conferring to prepare this report and in light of an opinion issued by Judge Trevor N. McFadden after Plaintiff filed suit (*see Am. Ctr.*, 2020 U.S. Dist. LEXIS 131212), Plaintiff advised Defendant that Plaintiff was narrowing the scope of its request to the seven (7) requests made by Ambassador Power to 'unmask' the identity of former National Security Advisor Lt. General Michael T. Flynn on the following dates: November 30, 2016; December 2, 2016; December 7, 2016; December 14, 2016 (2 requests); December 23, 2016, and January 11, 2017." (ECF No. 10, Plaintiff's Position at ¶ 2) As reflected in that status report, Defendant disputed Plaintiff's characterization of this as a "narrowing" of the request. (*Id.*, Defendant's Position at ¶ 4)

Although the FOIA permits requesters to modify their requests after submission, *see* 5 U.S.C. § 552(a)(6)(B)(ii) ("[t]he agency shall . . . provide the person an opportunity to limit the scope of the request"), the statute does not "require[] a court to allow FOIA modifications during the course of litigation." *Serv. Women's Action Network v. Dep't of Def.,* No. 11-1534, 2013 U.S. Dist. LEXIS 37655, at *7-8 (D. Conn. March 19, 2013). The Court, therefore, should limit its analysis to the request as administratively exhausted before the agency and as described in the Complaint. However, even if Plaintiff could narrow its request in the manner it proposes after the filing of litigation and over the agency's objection, this purported "narrowing" still would not change the analysis in Section II.A above for several reasons.

First, to the extent Plaintiff is "narrowing" the request as it claims, the narrowed request still would be encompassed within the subject matter of the request that Plaintiff has attributed to it in court filings. By definition, when a request is "narrowed," the requester is seeking a more narrow subset of information that otherwise would be responsive to the request as originally submitted. Thus, the subject matter of the original request as characterized by Plaintiff—Russian

interference in the 2016 election—still overlays the purported narrowed request and thus still creates a mismatch between the request as purportedly narrowed and the content of the declassified memorandum, which is silent as to any subject matter of the intelligence reports, thereby precluding waiver.

Second, should Plaintiff attempt to divorce the purported narrowed request from the context of the existing request—that is, by asserting that it seeks unmasking requests pertaining to General Flynn irrespective of the subject matter—then Plaintiff's purported narrowing is not a narrowing at all. Rather, that would be an entirely new request that Plaintiff would need to submit to the Department and for which Plaintiff would need to exhaust administrative remedies before seeking judicial review.

Although exhaustion of administrative remedies is not jurisdictional, exhaustion is a "condition precedent" to filing a lawsuit and the failure to exhaust "precludes judicial review." *Hidalgo v. FBI,* 344 F.3d 1256, 1259 (D.C. Cir. 2003); *Bonner v. SSA,* 574 F. Supp. 2d 136, 138-39 (D.D.C. 2008) (observing that administrative exhaustion is a "condition precedent" to filing suit and dismissing prematurely filed lawsuit); *Judicial Watch v. FBI,* Civ. A. No. 01-1216, 2002 U.S. Dist. LEXIS 28168, at *14 (D.D.C. July 26, 2002) (dismissal appropriate for prematurely filed lawsuit even if "the defendant subsequently failed to timely respond to the plaintiffs substantive request for the documents" because "the Court will only consider those facts and circumstances that existed at the time of the filing of the complaint, and not subsequent events, in deciding whether this case must be dismissed").[3]

---

[3] In the event the Court were to conclude in ruling on this motion that Plaintiff's FOIA request is not confined to the subject matter of Russian interference in the 2016 presidential election despite Plaintiff's representations to that effect, Defendant maintains that the declassified memorandum does not effectuate a waiver of the *Glomar* response for other reasons that it will

## CONCLUSION

For the foregoing reasons, this Court's decision in *Judicial Watch I* remains binding on

Plaintiff and, for that reason, judgment on the pleadings should be granted in favor of Defendant

and this case dismissed with prejudice.

<div style="margin-left:40%">

Respectfully submitted,

MICHAEL R. SHERWIN
Acting United States Attorney

DANIEL F. VAN HORN, D.C. BAR # 924092
Civil Chief

By: _____/s/_____
JEREMY S. SIMON, D.C. BAR #447956
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-2528
Jeremy.Simon@usdoj.gov

Counsel for Defendant

</div>

---

address on a more complete record. Accordingly, in that event, the Court should afford the Department the opportunity to further address the waiver issue, including through the submission of extrinsic evidence, before reaching any determination that a waiver of the *Glomar* response with respect to the request at issue, or any portion thereof, has occurred.  Finally, were the Court ultimately to determine that a waiver has occurred, any such waiver of the Department's *Glomar* response would be confined to the narrow waiver found in *American Center*, which Plaintiff seems to acknowledge by its attempt to "narrow" its request to conform to the narrow waiver recognized in that case.