UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC.,

    *Plaintiff*,

v.

UNITED STATES DEPARTMENT OF
STATE,

    *Defendant*.

Civil Action No. 20-1729 (TJK)

**MEMORANDUM OPINION AND ORDER**

Judicial Watch, Inc. sued the Department of State under the Freedom of Information Act to obtain records of requests made by, or on behalf of, former United Nations Ambassador Samantha Power to "unmask" the identity of former National Security Advisor Lieutenant General Michael Flynn in intelligence reports. After searching for such records, the State Department found none. The State Department now moves for summary judgment, arguing that its search was adequate. Judicial Watch opposes and cross-moves for summary judgment, arguing to the contrary. On the record before it, the Court finds that the State Department's search was largely but not entirely adequate, but it will allow the State Department to try to remedy the identified inadequacies. Thus, the Court will grant in part and deny without prejudice in part the State Department's motion, deny in part and deny without prejudice in part Judicial Watch's cross-motion, and order the parties to file a joint status report addressing how they wish to proceed.

**I.    Background**

In 2019, Judicial Watch submitted a FOIA request to the State Department seeking a wide array of records relating to alleged requests from former U.N. Ambassador Samantha Power to intelligence-community agencies for information generally concerning potential ties between

former President Trump and the Russian government. ECF No. 29 at 11–13 ¶ 1; *see also* ECF No. 1 ¶ 5. The State Department acknowledged receiving the request but never responded to it. *See id.* ¶¶ 6–7; ECF No. 19 at 3–4.

Judicial Watch previously had submitted an identical request to the State Department, which issued a *Glomar* response that this Court upheld. *See* ECF No. 1 ¶ 8; *Judicial Watch, Inc. v. U.S. Dep't of State*, 373 F. Supp. 3d 142, 145, 147, 149 (D.D.C. 2019).[1] Later, however, Acting Director of National Intelligence Richard Grenell declassified a memorandum ("Grenell Memorandum") listing government officials who submitted requests to the NSA between November 8, 2016 and January 31, 2017 to "unmask" Lieutenant General Michael Flynn in foreign intelligence reports. *See* ECF No. 1-1 at 2–4; ECF No. 29 at 13 ¶ 3.[2] The Grenell Memorandum revealed that several "authorized individuals" had requested "unmaskings" on behalf of a number of government officials, including Ambassador Power, who had seven such requests made on her behalf on six dates in late 2016 and early 2017—namely, November 30, 2016; December 2, 2016; December 7, 2016; December 14, 2016; December 23, 2016; and January 11, 2017. ECF No. 1-1 at 4.

Judicial Watch then sued over its 2019 FOIA request, arguing that the State Department's prior *Glomar* response had been "superseded" by the Grenell Memorandum. ECF No. 1 ¶¶ 10–14. Soon after that, another court in this District held that the State Department "no longer can assert a *Glomar* response . . . for records about the unmasking requests referenced" in the Grenell

---

[1] In other words, the State Department "refuse[d] to confirm or deny the existence or nonexistence of responsive records." *Elec. Priv. Info. Ctr. v. NSA*, 678 F.3d 926, 931 (D.C. Cir. 2012); *see also Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007).

[2] An "unmasking" request is a formal request to reveal the identity of a U.S. person who is referenced in a U.S. intelligence report but whose identity is anonymized, or "masked," in that report for legal reasons. *See Am. Ctr. for L. & Justice (ACLJ) v. U.S. NSA*, 474 F. Supp. 3d 109, 117 (D.D.C. 2020).

Memorandum, including Ambassador Power's seven unmasking requests. *See ACLJ*, 474 F. Supp. 3d at 120–21, 126–27. The parties then reported that Judicial Watch had narrowed its 2019 FOIA request—superseding the request referenced in its complaint, *see ACLJ v. U.S. DOJ*, 325 F. Supp. 3d 162, 168 (D.D.C. 2018)—to records of "seven (7) requests made by or on behalf of Ambassador Power to 'unmask' the identity of former National Security Advisor Lt. General Michael T. Flynn" on the six dates listed in the Grenell Memorandum, thus matching the "limited *Glomar* waiver" found in *ACLJ*. *See* ECF No. 20 ¶¶ 1, 3. The State Department searched for records potentially responsive to this narrowed request, finding many but ultimately determining after review that none were in fact responsive. *See id.* ¶¶ 3–4; *see also* ECF No. 22 ¶ 2; ECF No. 29 at 14 ¶¶ 6–7; ECF No. 31 at 1 n.1.

The State Department now moves for summary judgment, and Judicial Watch cross-moves for the same, arguing only about the adequacy of the search. ECF No. 27; ECF No. 29.

**II.  Legal Standards**

A court must grant summary judgment if the movant shows that, viewing the evidence in the light most favorable to the non-movant and drawing all reasonable inferences accordingly, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016). In a FOIA case, an agency is entitled to summary judgment on the adequacy of its search if it shows "that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). This is a "reasonableness test," meaning that a search need not be perfect or exhaustive to pass muster. *See Cole v. Copan*, No. 19-cv-1182 (TSC), 2020 WL 7042814, at *3 (D.D.C. Nov. 30, 2020); *Accuracy*

*in Media, Inc. v. Nat'l Transp. Safety Bd.*, No. 03-cv-24 (CKK), 2006 WL 826070, at *6 (D.D.C. Mar. 29, 2006). "[N]ot surprisingly," whether a search was reasonable depends on "the facts of each case." *Weisberg v. U.S. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984).

Generally, the adequacy of a FOIA search is determined not by its "fruits" but by the "appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003). Thus, "[e]ven when a requested document indisputably exists or once existed, summary judgment is not generally defeated by an unsuccessful search for the document," so long as the search was reasonable. *See* Cornish F. Hitchcock, 1 *Guidebook to the Freedom of Information and Privacy Acts* § 16:15, n.16 & accompanying text, Westlaw (updated Mar. 2022) (collecting authorities); *see, e.g.*, *Roberts v. U.S. DOJ*, No. 92-cv-1707 (NHJ), 1995 WL 356320, at *2 (D.D.C. Jan. 29, 1993).

The agency can meet its burden to show the adequacy of its search by submitting a "reasonably detailed" affidavit or declaration describing its efforts and "averring that all records likely to contain responsive materials (if such records exist) were searched." *See Oglesby*, 920 F.2d at 68; *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006). Such declarations are "accorded a presumption of good faith." *See Mobley v. CIA*, 806 F.3d 568, 581 (D.C. Cir. 2015). And summary judgment is warranted based on such declarations alone so long as they contain sufficient detail, are not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, and leave no material doubt that the search was reasonably calculated to uncover all relevant documents. *See ACLU v. U.S. Dep't of Defense*, 628 F.3d 612, 619, 626 (D.C. Cir. 2011); *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999).

### III. Analysis

The only issue before the Court is whether the State Department performed an adequate search for records responsive to Judicial Watch's narrowed FOIA request. The State Department asserts that it has and has submitted two declarations—one accompanying its motion, one accompanying its reply—to support its motion. ECF No. 27 at 14–15; ECF No. 27-2; ECF No. 31-1.[3] Judicial Watch argues otherwise, identifying several purported flaws with the State Department's search. ECF No. 29 at 3–9; ECF No. 33 at 1–3. Judicial Watch's arguments are generally wide of the mark, but two hit their target. To explain why, the Court first recounts the details of the State Department's search and then analyzes each argument raised by Judicial Watch.

#### A. The State Department's Search

To show the adequacy of its search, the State Department submitted two declarations from the Deputy Director of its Office of Information Programs and Services, the State Department official responsible for responding to FOIA requests submitted to the agency. *See* ECF No. 27-2 ¶¶ 2–3; ECF No. 31-1 ¶¶ 1–2. The Deputy Director explained that, upon reviewing Judicial Watch's narrowed FOIA request, the State Department determined that the only offices likely to have responsive documents were (1) the Bureau of Intelligence and Research ("Bureau") as well as (2) the Executive Section and the Washington Office of the United States Mission to the United Nations ("U.N. Mission"). *See* ECF No. 27-2 ¶ 12. She then explained why and discussed the searches done for records from those offices. *See id.* ¶¶ 13–25; ECF No. 31-1 ¶¶ 4–11.

---

[3] The Court may rely on a supplemental declaration submitted with an agency's reply memorandum where, as here, the FOIA requester had an opportunity to respond to the supplemental declaration. *See Property of the People, Inc. v. DOJ*, 405 F. Supp. 3d 99, 109 n.7 (D.D.C. 2019); *Coffey v. Bureau of Land Mgmt.*, 277 F. Supp. 3d 1, 7 n.1 (D.D.C. 2017); *cf. Int'l Ctr. for Tech. Assessment v. Johanns*, 473 F. Supp. 2d 9, 21 (D.D.C. 2007) (recognizing that new evidence submitted with a reply may be considered as long as the opposing party has had an opportunity to respond).

As for the Bureau, the Deputy Director explained that its "primary mission" is to "harness intelligence to serve U.S. diplomacy." ECF No. 27-2 ¶ 13. The Bureau "maintains both electronic and hard copy working files" that relate to issues within its purview, and its electronic records include email records and databases that contain information received from the intelligence community. *Id.* According to the Deputy Director, unmasking requests would be documented in the Bureau's "Automated Biometric Identification System" ("IDENT") and would include "unmasking requests made via email, verbal unmasking requests memorialized in emails, and spreadsheets cataloguing such requests." *Id.* ¶ 14; ECF No. 31-1 ¶¶ 5–7. A Special Assistant with the Bureau who was familiar with the FOIA request and the Bureau's records systems did a "manual search and review" of the Bureau's electronic IDENT records for the date range of November 30, 2016 to January 11, 2017, encompassing the dates of Ambassador Power's unmasking requests mentioned in the Grenell Memorandum. *See* ECF No. 27-2 ¶ 14. The Special Assistant reviewed these records to see if Ambassador Power's name appeared in them because, according to the Bureau, "unmasking requests made to [it] on behalf of an individual should include that individual's name." ECF No. 31-1 ¶ 7. The Special Assistant found no responsive records. ECF No. 27-2 ¶ 14. The Special Assistant did not review any hard copy files because the Bureau's IDENT records for the relevant period are only maintained electronically. ECF No. 31-1 ¶ 5; *see also* ECF No. 27-2 ¶ 14.

As for the U.N. Mission, the Deputy Director explained that the U.N. Ambassador "sits in the Executive Section" of the U.N. Mission, that the Washington Office is the "Washington, DC-based arm of the Executive Section," and that these two offices "provide direct support" to the Ambassador while the U.N. Mission's other offices do not. *See* ECF No. 31-1 ¶ 10; ECF No. 27-2 ¶¶ 16–17. Thus, those two offices were determined to be the only U.N. Mission offices likely to contain responsive records. ECF No. 27-2 ¶ 16. A Research Analyst with the U.N. Mission who

was familiar with the FOIA request and the U.N. Mission's record systems determined that, given the date range at issue, responsive records would be stored in the State Department's eRecords Archive and its retired records. *See id.*

The eRecords Archive is the State Department's "central repository" for storing certain electronic records, including "all emails sent and received on the state.gov network since January 1, 2017" as well as "pre-2017 email records of certain former senior officials" such as Ambassador Power. ECF No. 27-2 ¶ 19.[4] The eRecords Archive contains a "search interface" that allows a user to search for terms in records either across the entire archive or just from certain offices. *See id.* ¶¶ 19–20. A Government Information Specialist ("Specialist") with the State Department's Office of Information Programs and Services who was familiar with the FOIA request and the eRecords Archive first searched the entire archive for records containing "'Samantha Power' AND 'Michael Flynn' AND 'unmasking'"—that is, records containing all three sets of terms—for the date range of November 20, 2016 to January 20, 2017. *Id.* ¶ 20. That search yielded about 19,000 potentially responsive records, but upon review none was found to be responsive. *Id.* The Specialist also searched the Executive Section and the Washington Office databases in the archive for records containing "(Samantha w/2 Power) OR (Ambassador w/2 Power)"—meaning records that have "Samantha" or "Ambassador" within two words of "Power"—for the date range of November 20, 2016 to January 20, 2017. *Id.* ¶ 21. That search yielded about 2,500 potentially responsive records, but upon review none was found to be responsive. *Id.*

The State Department's retired records are maintained in the "Retired Records Inventory Management System" ("System"), which permits a user to search records retired to the "Records

---

[4] Ambassador Power and staffers at the U.N. Mission during her tenure there used @state.gov email addresses. *See* ECF No. 31-1 ¶ 9.

Service Center." *See* ECF No. 27-2 ¶ 22. The System can be searched for terms appearing in the text of "retired file manifests," which are indices of the contents of retired paper and electronic files and are used to direct a researcher to specific retired files. *Id.* Upon finding files via a file-manifest search, a user may then search within the files themselves. *Id.* A Specialist with the State Department's Office of Information Programs and Services who was familiar with the FOIA request and the System searched for retired file manifests containing "'Samantha Power' OR 'Ambassador Power'"—meaning manifests in which one of these two sets of terms appear—for the date range of November 20, 2016 to January 20, 2017. *See id.* ¶ 23. The Specialist received results from that search and then searched within those results for U.N. Mission files, ultimately retrieving one hard copy file and three electronic files. *Id.* The Specialist manually reviewed the hard copy file but found no responsive records. *Id.* The Specialist searched within the three electronic files for records containing "(Samantha w/2 Power) OR (Ambassador w/2 Power)" for the date range of November 20, 2016 to January 20, 2017. *Id.* That search yielded about 3,000 potentially responsive records, but upon review none was found to be responsive. *Id.*

The Deputy Director concluded that the State Department "searched all locations reasonably likely to contain" responsive records, that it "searched all files reasonably likely to contain" responsive records, and that no other locations "were reasonably likely" to have responsive records. ECF No. 27-2 ¶¶ 24, 26; ECF No. 31-1 ¶ 12. Even so, the agency "did not identify any responsive material." *Id.*

    **B.**    **Judicial Watch's Challenges to the State Department's Search**

Judicial Watch challenges several aspects of both the Bureau search and the U.N. Mission search. Most of these challenges fail, but a few succeed.

8

### 1. Challenges to the Bureau Search

As for the search in the Bureau's records, Judicial Watch argues that material doubt exists about whether IDENT was the proper system to search for responsive records. *See* ECF No. 29 at 6; *see also Flete v. Garcia v. U.S. Marshals Serv.*, --- F. Supp. 3d ----, 2020 WL 1695127, at *4 (D.D.C. Apr. 7, 2020) (noting that a FOIA requester may demonstrate that a search was inadequate by showing "the inadequacy of the particular locations searched" (internal quotation marks omitted)). For support, Judicial Watch points to the Department of Homeland Security's official description of the State Department's use of IDENT in a 2012 publication:

> [The State Department] searches and enrolls data in IDENT and uses IDENT to establish and verify the identities of visa applicants at embassies and consulates around the world through its BioVisa program. Consular officers also use this information in determining visa eligibility. [The State Department] Office of Personnel Security and Suitability . . . also uses IDENT for personnel security and suitability determinations.

ECF No. 29 at 6 (quoting ECF No. 29-1 at 15).[5] According to Judicial Watch, "[n]othing in that description sounds remotely like a location for unmasking requests" from Ambassador Power. *Id.*

This argument fails. The Deputy Director asserted that the State Department uses IDENT to "document[]" unmasking requests, including "unmasking requests made via email, verbal unmasking request memorialized in emails, and spreadsheets cataloguing such requests." ECF No. 31-1 ¶ 7; *see also* ECF No. 27-2 ¶ 14. And the official description of IDENT reflects this explanation. It mentions that the State Department uses IDENT generally to "enroll[] data," and keeping records of unmasking requests in IDENT seems to qualify as "enroll[ing] data" there—at least,

---

[5] IDENT is managed by the Department of Homeland Security. *See* ECF No. 27-2 ¶ 14 n.2.

Judicial Watch makes no argument otherwise. *See* ECF No. 29-1 at 15. Taken together, the State Department has shown beyond material doubt that IDENT was a proper system to search.[6]

Judicial Watch also contends that the State Department failed to explain why "no paper files existed" in the Bureau's records for the date range in question despite acknowledging that the Bureau "maintains both electronic and paper files." ECF No. 29 at 5 (citing ECF No. 27-1 ¶ 13); *see also Schaerr v. U.S. DOJ*, 435 F. Supp. 3d 99, 124 (D.D.C. 2020) (noting that sometimes an agency must "explain[] why" it determined that certain records did not exist and thus did not search them). But the Deputy Director eventually explained that the Bureau's IDENT records for the date range in question "are only maintained electronically," which is why the Special Assistant determined that no potentially responsive paper files existed and thus did not search such files. *See* ECF No. 31-1 ¶ 5; *see also* ECF No. 27-2 ¶ 14.

Judicial Watch further asserts that the State Department failed to explain adequately its search for Bureau records. *See* ECF No. 29 at 5; *see also Roseberry-Andrews v. Dep't of Homeland Sec.*, 299 F. Supp. 3d 9, 19 (D.D.C. 2018) (noting that, to show the adequacy of its search, the agency needs to specify in its declarations "through what process" it searched for records, such as by providing "the search terms" used and "the type of search performed" or by "otherwise" providing "information about the search strategies" pursued (internal quotation marks omitted)). Not so. The Deputy Director explained that a Special Assistant with the Bureau did a "manual

---

[6] In passing, Judicial Watch also argues that the State Department "offers no reason why other [Bureau] systems were not searched." ECF No. 29 at 6. But the Deputy Director explained that IDENT is "the system" within the Bureau where "any unmasking requests would be documented." ECF No. 31-1 ¶ 7; *see also* ECF No. 27-2 ¶ 14. And after explaining the State Department's searches, she asserted that "no other components or records systems" besides those searched "were reasonably likely to maintain documents responsive to Plaintiff's request." ECF No. 27-2 ¶ 24; ECF No. 31-1 ¶ 12. This is enough. *See Oglesby*, 920 F.2d at 68.

search and review" of the Bureau's electronic IDENT records from the relevant date range. ECF No. 27-2 ¶ 14. In other words, rather than use search terms to narrow the universe of potentially responsive records to review, the Special Assistant just reviewed what records from that date range were found in the Bureau's IDENT system. And the Deputy Director explained that the Special Assistant specifically looked to see "whether Ambassador Power's name appeared in the records" to determine responsiveness. *See* ECF No. 31-1 ¶ 7.[7] This explanation suffices.

### 2. Challenges to the U.N. Mission Search

As for the search in the U.N. Mission's records, Judicial Watch contends that material doubt exists about whether the Executive Section was a proper location to search. ECF No. 29 at 9; *see also Flete*, 2020 WL 1695127, at *4. To support this point, Judicial Watch draws on the Deputy Director's description of the Executive Section:

> The Executive Section of the U.S. Permanent Representative to the UN[8] provides strategic counsel and operational support to the Permanent Representative. The Executive Section's policy team coordinates between the other sections in the Mission on cross-cutting issues, provides oversight and quality control on products for the Permanent Representative, and develops recommendations for potential Permanent Representative travel, speeches, and public engagements. The Executive Section's operational team provides administrative support to the Permanent Representative, including trip logistics, scheduling, and event planning.

ECF No. 27-2 ¶ 17 (quoted by ECF No. 29 at 9). Judicial Watch asserts that the State Department "never explains why an office dedicated to operational support and travel would receive and

---

[7] Judicial Watch also argues that searching the IDENT records only for Ambassador Power's name was "unreasonably limited" because doing so may have missed unmasking requests made on her behalf. *See* ECF No. 33 at 1–2. As for this search, the Court disagrees. The Deputy Director explained that unmasking requests in IDENT that were made "on behalf of an individual should include that individual's name." *See* ECF No. 31-1 ¶ 7. Thus, looking for Ambassador Power's name in these records could "be reasonably expected to produce the information requested." *See Oglesby*, 920 F.2d at 68.

[8] "Permanent Representative" is another title for the U.N. Ambassador. *See* ECF No. 27-2 ¶ 16.

11

maintain unmasking requests by a U.S. Ambassador." ECF No. 29 at 9.

This argument is misplaced. To begin with, this description includes that the Executive Section provides "operational support" and "administrative support" to the U.N. Ambassador. ECF No. 27-2 ¶ 17. Submitting an unmasking request on behalf of the U.N. Ambassador sounds like either type of "support," and Judicial Watch noticeably makes no argument otherwise. The Deputy Director also explained that the Executive Section's records were searched because that office "provide[s] direct support" to the U.N. Ambassador. ECF No. 31-1 ¶ 10. The Deputy Director added that the U.N. Ambassador "sits in the Executive Section," meaning that this office would have her records. *Id*. Thus, the State Department has shown beyond material doubt that the Executive Section was a proper location to search.

Judicial Watch also argues that it is unclear whether either the eRecords Archive or the retired records would contain pre-2017 records from staffers in the Executive Section or the Washington Office, leaving material doubt that searching just these systems for potentially responsive U.N. Mission records was adequate. *See* ECF No. 29 at 8; ECF No. 33 at 3; *see also Flete*, 2020 WL 1695127, at *4. On this score, the Court agrees.

The record here, which shows that six of the seven unmasking requests at issue were made in 2016, strongly suggests that all these unmasking requests were made on Ambassador Power's behalf by someone else rather than by her. *See, e.g.*, ECF No. 1-1 at 4; ECF No. 29-1 at 10–12. The Deputy Director explained that the eRecords Archive stores "all emails sent and received on the state.gov network since January 1, 2017, and . . . the pre-2017 email records of certain former senior officials" such as Ambassador Power. *See* ECF No. 27-2 ¶ 19.[9] But she did not explain

---

[9] Judicial Watch also asserts that it is "unclear" if Ambassador Power qualifies as a "former senior official." ECF No. 29 at 8. But the Deputy Director dispelled any doubts about this. *See* ECF

whether staffers in the Executive Section or the Washington Office who seemingly submitted these unmasking requests are "former senior officials" whose pre-2017 email records would also be stored in the eRecords Archive. *See* ECF No. 27-2 ¶ 19. The Deputy Director suggests that this is not an issue because, "[i]n any event," the State Department "also searched its retired records," implying that pre-2017 email records of non-senior officials are stored there. *See* ECF No. 31-1 ¶ 8; *see also* ECF No. 31 at 7. But she did not spell that out in either declaration—indeed, she never even articulated what kinds of records are stored as retired records. *See* ECF No. 27-2 ¶¶ 16, 22; *cf. id.* ¶ 19 (explaining the kinds of records stored in the eRecords Archive). The Court "cannot fill in these gaps for the agency." *Roseberry-Andrews*, 299 F. Supp. 3d at 23 (internal quotation marks omitted). Thus, on this issue, the State Department has so far failed to provide a "relatively detailed" and "nonconclusory" declaration showing that its search was adequate. *See Cole v. Copan*, 485 F. Supp. 3d 243, 250 (D.D.C. 2020). That said, the Court will deny both parties' motions without prejudice on this point and afford the State Department an opportunity to remedy this deficiency. *See, e.g.*, *Swick v. U.S. Dep't of Army*, 471 F. Supp. 3d 246, 249 (D.D.C. 2020).

Finally, Judicial Watch argues that the State Department's search of both the eRecords Archive and its retired records was "unreasonably narrow" because the terms used sought for records containing basically only either "Ambassador Power" or "Samantha Power." *See* ECF No. 29 at 7; *see also* ECF No. 27-2 ¶¶ 21, 23.[10] Here too, for now, the Court agrees.

---

No. 27-2 ¶ 19; ECF No. 31-1 ¶ 8.

[10] Judicial Watch also argues that the State Department's initial, global search of the eRecords Archive for "'Samantha Power' AND 'Michael Flynn' AND 'unmasking'" was too narrow for similar reasons. ECF No. 29 at 7; *see also* ECF No. 27-2 ¶ 20. But the State Department ran a second search of the relevant sections of the eRecords Archive—the Executive Section and the Washington Office sections—using the broader search terms "(Samantha w/2 Power) OR (Ambassador w/2 Power)." *See* ECF No. 27-2 ¶ 20. This second search resolved any ostensible

13

Of course, the State Department had "discretion" to use the search terms of its choosing, but that discretion was "not boundless." *See Coffey v. Bureau of Land Mgmt.*, 249 F. Supp. 3d 488, 498 (D.D.C. 2017) (internal quotation marks omitted). It still had to choose terms that were "reasonably tailored" to find responsive records and demonstrate as much beyond material doubt. *See id.* (internal quotation marks omitted); *Gov't Accountability Project v. U.S. Dep't of Homeland Sec.*, 335 F. Supp. 3d 7, 11 (D.D.C. 2018).

For now, although it is a close question, in the Court's view the State Department has not made that showing. At the very least, this is because the State Department failed to include obvious permutations of how Ambassador Power might have been referred to in an unmasking request made on her behalf without the use of her name—for instance, an email might refer to an unmasking request made on behalf of "the United Nations Ambassador" or "the U.N. Ambassador." *See, e.g.*, *Bagwell v. U.S. DOJ*, 311 F. Supp. 3d 223, 229–30 (D.D.C. 2018) (finding a search for "Pennsylvania State University" inadequate because it "would not pick up documents that contained only 'PSU' or 'Penn State,' names commonly used to refer to the University"). Granted, to justify the State Department's narrower search, the Deputy Director asserted that "the only basis" on which the State Department could "identify a request made by or on behalf of Ambassador Power was if an iteration of her name appeared in that request." *See* ECF No. 31-1 ¶ 11. But at least on this record, the Court fails to understand why this is so. Given the narrow date range in question—during all of which Ambassador Power was U.N. Ambassador, *see* ECF No. 27-2 ¶ 20—an unmasking request from that date range containing variations of her title like those mentioned above

---

deficiencies in the first search, so the Court considers only Judicial Watch's challenge to the second eRecords Archive search. *See Coleman ex rel. Wright v. Dep't of Navy*, No. 19-cv-3191 (ABJ), 2020 WL 5545543, at *5 n.3 (D.D.C. Sept. 16, 2020); *ACLU v. U.S. Dep't of Homeland Sec.*, 738 F. Supp. 2d 93, 104 (D.D.C. 2010).

would still identify her as the source of the request, even without using her name. Thus, "material doubt" on this issue remains, and "summary judgment is improper at this time." *See Conway v. U.S. Agency for Int'l Dev.*, 99 F. Supp. 3d 171, 178 (D.D.C. 2015).[11]

That said, the Court does not dictate what search terms the State Department must use to fulfill its FOIA obligations in this case—after all, the Court's role generally is simply to "confirm" that the agency's chosen terms are reasonable. *See Coffey*, 249 F. Supp. 3d at 498–500. And it is not out of the question that the State Department could yet explain adequately why using its chosen search terms were "reasonable under the circumstances." *See id.* at 500. Thus, the Court will deny without prejudice both parties' motions as to the adequacy of the State Department's search in the eRecords Archive and its retired records. *See, e.g.*, *Bagwell*, 311 F. Supp. 3d at 230. Further, given the two lingering issues with the State Department's search that the Court has identified, the Court will order the parties to confer and then file a joint status report addressing how they suggest proceeding. *See, e.g.*, *id.*

---

[11] Although the State Department's search of the IDENT database also was limited to searching for Ambassador Power's name, the Court found that search adequate because the Deputy Director explained that unmasking requests housed in IDENT that were made "on behalf of an individual should include that individual's name." *See* ECF No. 31-1 ¶ 7; *supra* note 7. The State Department makes no similar representation about the contents of the eRecords Archive and its retired records.

## IV. Conclusion and Order

For all these reasons, it is hereby **ORDERED** that:

1. The State Department's Motion for Summary Judgment, ECF No. 27, is **GRANTED IN PART AND DENIED WITHOUT PREJUDICE IN PART**;

2. Judicial Watch's Cross-Motion for Summary Judgment, ECF No. 29, is **DENIED IN PART AND DENIED WITHOUT PREJUDICE IN PART**; and

3. The parties shall confer and file a joint status report by September 28, 2022, informing the Court how they plan to proceed concerning the remaining issues in this case.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: September 7, 2022